**In re CARAVANSARY, INC., a California corporation, Debtor(s).**

**Joseph S. PASSANISI, Betty Ann Passanisi, Antonio Campilongo and Frances Campilongo, Appellants,**

v.

**CARAVANSARY, INC., Appellee.**

**BAP No. NC 86–1200 EAsV.**

**Bankruptcy No. 3–85–02386 LK.**

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued and Submitted July 24, 1986.

Decided Nov. 19, 1986.

Paul Varnum, Robert Andrew Harkness, Vaughan, Paul & Lyons, San Francisco, Cal., for appellants.

John T. Hansen, Law Offices of John T. Hansen, San Francisco, Cal., for appellee.

Before ELLIOTT, ASHLAND and VOL-INN, Bankruptcy Judges.

## OPINION

ELLIOTT, Bankruptcy Judge:

The debtor in possession, Caravansary, Inc., moved to assume its unexpired lease of nonresidential real property from the Passanisis and the Campilongos ("the lessors"). In granting the motion, the bankruptcy court held that the improvements clause contained in Paragraph 24 of the lease was unenforceable because it was too vague to satisfy California's statute of frauds and therefore the debtor did not have to cure the default under Paragraph 24 in order to assume the lease. We vacate and remand for further proceedings.

## BACKGROUND

Caravansary filed its petition for relief under Chapter 11 in November 1985. In January 1986 Caravansary timely moved to assume its lease of a building located at 310 Sutter Street in San Francisco. Caravansary operates a restaurant and delicatessen in the building and also maintains its corporate offices there.

In May 1984 the president of Caravansary, anticipating the expiration of the ten year lease under which it had been occupying the building, wrote to the lessors' leasing agent inquiring about purchase of the building or the renewal of the lease.

Negotiations ensued, and in October 1984 Caravansary's president wrote to the lessors that it desired to renew its 310 Sutter Street lease on the expiration of the then current lease in March 1985. The letter stated that the terms outlined at a meeting the week before were agreeable to Caravansary and then listed those terms. They include: (1) rent at $15,000 per month, adjusted according to the provisions of the then current lease, (2) a five year term with an option to renew for five years at fair market value, (3) a cost of living provision to begin in the third year, and (4) improvements estimated at $120,000 for replacement of the elevator, installation of air conditioning and venting, and interior and exterior renovation. In the letter, Caravansary also asked the landlord to assist in financing the improvements through one or more of three types of specified arrangements.

Further negotiations concerning the improvements and their financing took place after the October letter was written and before a formal lease was executed on February 19, 1985. The lease, though much more detailed than the October letter, also provided for rent of $15,000 per month, a five year term commencing March 1, 1985,

with an option to renew for five years, and cost of living adjustments beginning in the third year of the lease. However, Paragraph 24 of the lease only required Caravansary to "make certain proposed repairs, alternations and improvements at its sole cost and expense" beginning within sixty days of the commencement of the lease. It also provided that the lessors would finance half of up to $100,000 worth of work.

An "addendum" to the lease conditioned commencement of the repair work on the lessors' prior written approval. It also specified that the timing for the work was to coincide with slow business periods and that the work was to be completed in 1985. At the time Caravansary moved to assume the lease, it had not made repairs, alterations or improvements pursuant to Paragraph 24.

For different reasons, both the debtor and lessor asserted that Paragraph 24 of the lease was unenforceable by reason of the statute of frauds. The debtor wished to be excused from its default under Paragraph 24 in order to assume the lease without curing the default as required under 11 U.S.C. § 365.[1] The lessor, on the other hand, asserted that because Paragraph 24 was unenforceable under the statute of frauds, the entire lease was unenforceable.

Given the agreement of the parties that Paragraph 24 was subject to the statute of frauds, the only remaining issue, in the bankruptcy judge's view, was whether the whole lease or only Paragraph 24 was unenforceable.

The bankruptcy judge ruled that the remainder of the lease was enforceable. To reach that result, he relied on the principle that the forfeiture of leases is disfavored. Because Caravansary had been a tenant in the building for eleven years he felt that forfeiture of the lease would be a serious matter. Moreover, because he found that Paragraph 24 was a significant but nonessential covenant of the lease, the bankruptcy judge concluded that its breach would not result in a forfeiture of the lease. Ac-

cordingly, he held that Paragraph 24's unenforceability did not render the entire lease unenforceable and forfeited. The bankruptcy judge then authorized the assumption of the lease.

The lessors appeal and argue that the bankruptcy judge erred because (1) a lease cannot be assumed in part and rejected in part, (2) a lease must be declared unenforceable in its entirety when a covenant of the lease that fails to satisfy the statute of frauds is coupled with covenants in the lease which do not violate the statute of frauds, (3) he found that the repairs provision was a significant but nonessential covenant of the lease after concluding that the covenant did not satisfy the statute of frauds, (4) he found that Caravansary had not defaulted on the lease by failing to make the repairs required by Paragraph 24, (5) he failed to find that the lease was entire and not divisible, and (6) he failed to make any finding as to the divisibility of the lease.

## ISSUES

We address the issues in the following order: (1) Is there an agreement between the parties concerning repairs, improvements, and renovation? (2) If there is an agreement, does the statute of frauds bar enforcement of the agreement? (3) If there is an enforceable agreement, must the debtor cure the default in order to assume the lease?

In this case, the parties misled the bankruptcy judge when they agreed that the statute of frauds applied to Paragraph 24 of the lease. They put the cart before the horse. To apply the statute of frauds, you must first have an agreement. Cf. Bettancourt v. Gilroy Theatre Co., 120 Cal. App.2d 364, 367–75, 261 P.2d 351 (1953) (determining whether a construction clause in an agreement for the sale of realty was sufficiently definite to create a contractual

---

1. In the alternative, assuming the court found Paragraph 24 to be enforceable, the debtor asked the court to approve a specific proposal to cure the default.

obligation before applying the statute of frauds to that provision); *but cf. Ellis v. Klaff,* 96 Cal.App.2d 471, 474–80, 216 P.2d 15 (1950) (mixing a determination that the parties had no agreement regarding a construction clause in a lease of realty into an analysis of whether the clause satisfied the statute of frauds).

## AGREEMENT

To show a meeting of the minds there must be certainty and definiteness as to the terms of the contract. *Nevills v. Moore Mining Co.,* 135 Cal. 561, 563, 67 P. 1054 (1902); 1 B. Witkin, *Summary of California Law* Contracts § 108 (8th ed. 1973). If the contract is so uncertain that the intention of the parties regarding material terms cannot be ascertained, the contract is void and unenforceable. *California Lettuce Growers, Inc. v. Union Sugar Co.,* 45 Cal.2d 474, 481, 289 P.2d 785 (1955). However, if the indefinite term is nonessential, "each party will be forced to accept a reasonable determination of the unsettled point or if possible the unsettled point may be left unperformed and the remainder of the contract be enforced." *City of Los Angeles v. Superior Court,* 51 Cal.2d 423, 433, 333 P.2d 745 (1959); *accord Mabee v. Nurseryland Garden Centers, Inc.,* 84 Cal.App.3d 968, 972, 149 Cal.Rptr. 105 (1978). The indefinite promise is material if it "is so essential to the bargain that inability to enforce that promise strictly according to its terms would make unfair the enforcement of the remainder of the agreement." In any event, though, the law does not favor destruction of contracts because of uncertainty and will construe agreements to effectuate the reasonable, ascertainable intent of the parties. *Wong v. Di Grazia,* 60 Cal.2d 525, 539, 386 P.2d 817, 35 Cal.Rptr. 241 (1963).

## STATUTE OF FRAUDS

■ If the bankruptcy judge, on remand, finds that there is an agreement between the parties as to repairs, improvements and renovations, that agreement is not barred by the statute of frauds by reason of its inclusion in a lease of real property for a term in excess of one year.

California's statute of frauds provides that certain contracts are invalid, unless the contract itself, or some note or memorandum thereof, is in writing and subscribed by the party to be charged or by the party's agent. Cal.Civ.Code § 1624(c).

The California Supreme Court has adopted a "policy of restricting the application of the statute of frauds exclusively to those situations which are precisely covered by its language." *White Lighting Co. v. Wolfson,* 68 Cal.2d 336, 345–46, 438 P.2d 345, 66 Cal.Rptr. 697 (1968). In the same case, the Supreme Court stated that "[i]f a claimant alleges two or more promises of performance 'that can easily be distinguished and separated by the court by reference to the agreement itself,' only that promise of performance which falls clearly within the statute of frauds cannot be enforced." *Id.* (quoting 2 Corbin on Contracts § 313, at pp. 127–128). A promise to make repairs, alterations, and improvements can easily be distinguished and separated from the rest of the lease.

## CONCLUSION

If the bankruptcy judge finds, unimpeded by the statute of frauds, that the parties did not reach an agreement as to repairs, improvements and renovations, then the debtor may assume the lease without curing the default under Paragraph 24 of the lease.

On the other hand, if there is an agreement as to repairs, improvements and renovations, the debtor must assume the burdens of the contract along with its benefits.

■ Although Paragraph 24 may be severable from the lease for purposes of the statute of frauds, it is not severable from the lease for purposes of assumption under

11 U.S.C. § 365. The lease must be assumed as a whole or rejected as a whole. *Richmond Leasing Co. v. Capital Bank,* 762 F.2d 1303, 1311 (5th Cir.1985); *In re Nitec Paper Corp.,* 43 B.R. 492, 498 (S.D. N.Y.1984).

The record reflects that the debtor has not made any repairs or improvements. The bankruptcy judge must determine if the debtor can cure the default or give adequate assurance of promptly curing the default before permitting the debtor to assume the lease, 11 U.S.C. § 365.

We REVERSE the order permitting assumption of the lease and REMAND for further proceedings consistent with this opinion.